# FLETCHER *v.* UNITED STATES.

CRIMINAL LAW; CONSPIRACY; STATUTES; INDICTMENT; WITNESSES; IMPEACHMENT; EVIDENCE; PUNISHMENT; APPEAL AND ERROR.

1. Since a crime against the United States is committed by any person who violates either sec. 818, D. C. Code [31 Stat. at L. 1323, chap. 854], making it an offense wrongfully to accuse any woman of unchastity, or sec. 858, denouncing perjury, an indictment for conspiracy to commit either of those crimes charges an offense under sec. 37, U. S. Penal Code of March 4, 1909 (35 Stat. at L. 1088, chap. 321, U. S. Comp. Stat. Supp. 1911, p. 1588), providing that if two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner, or for any other purpose, and one or more of such parties does any act to effect the object of the conspiracy, each of the parties to the conspiracy shall be subjected to specified punishment. (Citing *United States* v. *Cella,* 37 App. D. C. 423.)

2. Sec. 910, D. C. Code [31 Stat. at L. 1337, chap. 854], providing that anyone convicted of any criminal offense not covered by the provisions of any section of the Code, or of any general law of the United States not locally inapplicable in the District of Columbia, shall be subjected to specified punishment, is inapplicable to any offense de-

nounced by any other section of the District Code, or by any general law of the United States not locally inapplicable, having been intended to supplement, and not to supersede or modify, specific statutory provisions.

3. The crime of conspiracy to commit perjury, under sec. 37, U. S. Penal Code of March 4, 1909 (35 Stat. at L. 1088, chap. 321, U. S. Comp. Stat. Supp. 1911, p. 1588), relating to conspiracy to commit an offense against the United States, and sec. 858, D. C. Code [31 Stat. at L. 1329, chap. 854], denouncing perjury, is charged by an indictment reciting the pendency of a divorce suit in the supreme court of the District of Columbia, and averring that the defendant in the indictment conspired to charge the plaintiff in the divorce suit with adultery by securing false and fraudulent evidence against her, with the intent to use the same in the divorce suit; and therefore the indictment cannot be regarded as based upon sec. 910, D. C. Code, providing that any person convicted of any criminal offense not covered by the provisions of any section of the District Code, or of any law of the United States not locally inapplicable to the District of Columbia, shall be punished as specified.

4. The requisites of an indictment for conspiracy to commit an offense differ from the requirements of an indictment for the specific offense (citing *Dufour* v. *United States,* 37 App. D. C. 497), for, in the former, conspiracy is the gist of the crime, and certainty to a common intent, sufficient to identify the offense which the defendant conspired to commit, is all that is necessary in stating the object of the conspiracy.

5. Knowledge of the pendency of a divorce suit on the part of the defendants in an indictment for conspiracy wrongfully to charge the plaintiff in such suit with adultery is averred with sufficient certainty where it is alleged that the defendants conspired to secure false and fraudulent evidence of such adultery for use in the divorce suit. (Citing *Dufour* v. *United States, supra.*)

6. The act of the assistant clerk in breaking the seal of the jury box and drawing a jury by direction of the clerk and in his presence, and in the public office of the clerk, several other persons being present, is a sufficient compliance with sec. 204, D. C. Code [31 Stat. at L. 1222, chap. 854], providing that the clerk shall publicly break the seal of the jury box and draw therefrom the names.

7. The testimony of an impeaching witness as to the general reputation for truth and veracity of the witness sought to be impeached, is inadmissible where the impeaching witness is unable to state what is generally said of the other witness by those among whom the latter resides.

8. The bill, answer, and cross bill in a wife's suit for divorce are competent to show the marriage, as against the husband in a trial of an indictment against him and others for conspiracy to obtain false evidence of adultery on the part of the wife for use in the divorce suit.

9. Proof of the marriage of the parties to a divorce suit instituted by the wife is unnecessary in the trial of an indictment for conspiracy to obtain false evidence of her adultery, for use in such suit, where there is evidence tending to support the averments of the indictment that the defendant conspired to obtain false evidence against her, "Julia B. Fletcher, being then and there a married woman, and the wife of the" defendant Fletcher,—since the offense of conspiracy may be committed without consummation of the crime which the defendants conspired to commit.

10. Failure to prove the woman's marriage in the trial of an indictment for conspiracy to obtain false evidence of adultery in violation of sec. 858, D. C. Code [31 Stat. at L. 1329, chap. 854], denouncing perjury, does not prevent a conviction where the facts alleged make out the offense of conspiracy falsely to charge a woman with unchastity in violation of sec. 918, D. C. Code [31 Stat. at L. 1338, chap. 854].

11. A criminal case in which the defendants received improper sentences under an inapplicable statute will be remanded by this court with direction that proper sentences be imposed upon all defendants, though only a part of them raised the question. (Citing *Re Gompers,* 40 App. D. C. 293, — L.R.A.(N.S.) —.)


On Application for a Rehearing.

12. Sentence should be imposed, not as for common-law conspiracy, but under sec. 37, U. S. Penal Code of March 4, 1909 [35 Stat. at L. 1088, chap. 321, U. S. Comp. Stat. Supp. 1911, p. 1588], relating to conspiracy to commit an offense against the United States, upon conviction under an indictment which, even though sufficient to charge common-law conspiracy, charges every element of the offense of conspiracy to commit perjury in violation of said sec. 37 in conjunction with sec. 858, D. C. Code [31 Stat. at L. 1329, chap. 854], denouncing perjury, and avers that the offense was committed against the form of the statute and against the peace and government of the United States, where there is ample evidence to support the indictment as to every element of the offense including the overt act, and the trial and charge to the jury proceeded upon the theory that the defendants were being tried for conspiracy to commit perjury.

No. 2603. Submitted February 6, 1914. Decided March 2, 1914. Application for rehearing submitted March 9, 1914. Decided April 6, 1914.

HEARING on an appeal by the defendants from a judgment of the Supreme Court of the District of Columbia convicting them of conspiracy.          *Reversed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a judgment after verdict in the supreme court of the District under an indictment charging the three defendants, James J. Fletcher, George Noble, and May King, appellants here, with the crime of conspiracy.

Two counts of the indictment were submitted to the jury, and the defendants were found guilty as to each. The first charges that on the 4th day of November, 1911, there was pending and at issue in the supreme court of the District, a court of competent jurisdiction, an equity suit filed by Julia B. Fletcher, the wife of James J. Fletcher, the object of which was the procurement of an absolute divorce. It is then charged that the defendants, "intending to injure said Julia B. Fletcher, by securing false and fraudulent evidence of adultery upon the part of her, the said Julia B. Fletcher, with the intent and purpose to use the same against her, the said Julia B. Fletcher, *in the said equity cause, so pending, as aforesaid,* in the said supreme court of the District of Columbia, did then and there, amongst themselves, feloniously, falsely, unlawfully, wickedly, and maliciously, conspire, combine, confederate, and agree together, falsely and fraudulently to charge and accuse her, the said Julia B. Fletcher, of the crime of adultery with one Roy Wilson, she, the said Julia B. Fletcher, being then and there a married woman, and the lawful wife of the said James J. Fletcher, as aforesaid, in the dishonest manner, and through and by means of the dishonest arrangements following." It is then charged that the defendant May King should persuade Mrs. Fletcher to drink an intoxicating beverage for the purpose of making her drunk, and to put her in a compromising position and atti-

tude with said Roy Wilson in a room and at a place not known, "whereby and by means of which she, the said Julia B. Fletcher, could be falsely and fraudulently charged and accused of the crime of adultery with the said Roy Wilson, she, the said Julia B. Fletcher, being then and there a married woman, and the lawful wife of the said James J. Fletcher, as aforesaid," as the defendants then and there well knew. Certain overt acts are then set forth, and it is charged that they were done "for the purpose of injuring the said Julia B. Fletcher, by securing the false and fraudulent evidence of adultery upon the part of her, the said Julia B. Fletcher, as aforesaid, with the intent and purpose to use the same against her, the said Julia B. Fletcher *in the said equity cause so pending, as aforesaid,* in the supreme court of the District of Columbia."

In the second count of the indictment it is charged that the wife of the defendant Fletcher was to be falsely and fraudulently accused of the crime of adultery with a person whose name was to the grand jury unknown. In all other respects it is like the first.

There was a motion to quash the indictment, and the grounds for the motion, not now abandoned, are: "1. The indictment fails to charge in law a crime properly. 2. The indictment is vague, indefinite, and lacks the precision with which it is necessary to charge in law a crime."

There was a challenge of the special venire of jurors and a motion to quash that venire, the ground of the challenge and motion being that the seal of the jury box was not publicly broken by the clerk of the court, as the law directs.

A motion in arrest of judgment was filed in behalf of each of the defendants upon the ground that the indictment was insufficient and bad in substance in that it failed to charge that the defendants, or either of them, had notice or knowledge of the pendency of the equity suit in the supreme court of the District. After overruling this motion the court sentenced the defendant May King to serve a term of two years, the defendant Noble to serve a term of three years, and the defendant Fletcher to serve a term of five years, respectively, in the penitentiary.

Counsel for the defendants Noble and Fletcher objected to the sentence imposed by the court on each of these defendants and the recording of the same as the judgment of the court, on the ground that the court had imposed sentence under sec. 910 of the Code of the District of Columbia [31 Stat. at L. 1337, chap. 854], permitting a maximum sentence of five years, when the sentence should have been imposed under the provisions of sec. 37 of the Federal Penal Code of 1910 [35 Stat. at L. 1096, chap. 321, U. S. Comp. Stat. Supp. 1911, p. 1600], wherein the maximum sentence is two years. These objections being overruled, exceptions were noted.

The various other alleged errors will be stated later.

*Mr. George P. Hoover,* for appellant Fletcher:

1. The error committed by the court in striking out the testimony of the witness Lagier was so prejudicial to the rights of the defendants as to demand the reversal of the judgment. *Brown* v. *United States,* 164 U. S. 221, 224; *State* v. *Johnson,* 40 Kan. 266, 269; *Ware* v. *State,* 36 Tex. Crim. Rep. 597, 598; *Hudspeth* v. *State,* 50 Ark. 534, 543; *Robinson* v. *State,* 16 Fla. 835, 838; *Nelson* v. *State,* 32 Fla. 244; *State* v. *Meadows,* 18 W. Va. 658; *Bates* v. *Barber,* 4 Cush. 107; *Hillis* v. *Wylie,* 26 Ohio St. 574; *Wilson* v. *State,* 3 Wis. 698; *Crawford* v. *State,* 112 Ala. 1, 9, 21; *Stevens* v. *Irwin,* 12 Cal. 306; *Eason* v. *Chapman,* 21 Ill. 33; *Knight* v. *House,* 29 Md. 194; *State* v. *Christian,* 44 La. Ann. 950; *Bullard* v. *Lambert,* 40 Ala. 204; *Ford* v. *Ford,* 7 Humph. 92, 102.

2. The indictment was defective and insufficient in that it failed to charge that the defendants had knowledge or notice of the pendency of the equity suit. *Pettibone* v. *United States,* 148 U. S. 197; *United States* v. *Carll,* 105 U. S. 611; *United States* v. *Taylor,* 57 Fed. 391; *State* v. *Carpenter,* 54 Vt. 551; *Horan* v. *State,* 7 Tex. App. 183; *United States* v. *Wilcox,* 4 Blatchf. 391; *State* v. *Hilton,* 26 Mo. 199; *United States* v. *Evans,* 10 Sawy. 132; *State* v. *Maloney,* 12 R. I. 251.

3. The prayers submitted to the court clearly set out the law

applicable to this case, and this defendant was entitled to have the jury clearly instructed as to what evidence they were entitled to take into consideration in determining the question as to whether or not he was guilty of the offense of conspiracy. *Logan* v. *United States,* 144 U. S. 263, 308, 309; *Brown* v. *United States,* 150 U. S. 93, 98; *Sorenson* v. *United States,* 143 Fed. 820, 821; *Brown* v. *United States,* 150 U. S. 93, 98; *Ex parte Black,* 147 Fed. 832, 840; *Richards* v. *United States,* 175 Fed. 911, 948.

*Mr. James A. O'Shea* and *Mr. Matthew E. O'Brien,* for appellant King:

1. The indictment must be definite and specific. *United States* v. *Cruikshank,* 92 U. S. 542; *United States* v. *Mills,* 7 Pet. 142; *United States* v. *Cook,* 17 Wall. 174; 1 Arch. Cr. Pr. and Pl. 261; *United States* v. *Carll,* 105 U. S. 611; *United States* v. *Simmons,* 96 U. S. 360; *Com.* v. *Clifford,* 8 Cush. 215; *Com.* v. *Bean,* 11 Cush. 414; *Com.* v. *Bean,* 14 Gray, 52; *Com.* v. *Filburn,* 119 Mass. 297; *United States* v. *Howell,* 11 Wall. 432; *United States* v. *Britton,* 108 U. S. 199; *Reg.* v. *King,* 7 Q. B. D. 782; *Com.* v. *Shedd,* 7 Cush. 514; *United States* v. *Hess,* 124 U. S. 483; *Pettibone* v. *United States,* 148 U. S. 197.

2. A wife cannot be a witness in a case where a joint charge is jointly charged against the others. *Com.* v. *Manson,* 2 Ashm. (Pa.) 31; *Rachels* v. *State,* 51 Ga. 374; *State* v. *Burlingham,* 15 Me. 104; *United States* v. *Addatte,* 6 Blatchf. 76, 132; Wright on Crim. Conspiracy, p. 220.

3. A wife is not a competent witness against her husband. Wright, Crim. Conspiracy, p. 220; *State* v. *Jolly,* 32 Am. Dec. 656; *Burnett* v. *Burkhead,* 76 Am. Dec. 358.

4. The jury was not drawn according to law. *Clark* v. *United States,* 19 App. D. C. 308; *Veazie* v. *China,* 50 Me. 518; *People* v. *Labadie,* 66 Mich. 702; *Goit* v. *Bingham,* 45 Mich. 429; *Milano* v. *United States,* 41 W. L. Rep. 357; *Clare* v. *State,* 30 Md. 163; *Hulse* v. *State,* 35 Ohio St. 421; *Mitchell*

v. *Lykens,* 3 Blackf. 258; *State* v. *Rollins,* 22 N. H. 526; *State*
v. *DaRocha,* 20 La. Ann. 356; *Gladden* v. *State,* 13 Fla. 623;
*Stokes* v. *State,* 24 Miss. 621; *Hulse* v. *State,* 35 Ohio St. 427;
Thompson and Merriman Juries, sec. 555; *Dutell* v. *State,* 4
G. Greene, 125.

5. In order to properly predicate a conspiracy to falsely
charge adultery, it was absolutely necessary that the marriage
be proved as a fact. *Brown* v. *Beckett,* 6 D. C. 253; *Hayes* v.
*People,* 25 N. Y. 390; *Hillers* v. *People,* 156 Ill. 511; Under-
hill, Crim. Ev. Par. 403; Bishop, Marr. & Div. 1038; 2 Green-
leaf, sec. 461; 1 Wharton, Crim. Ev. secs. 85, et seq.; Roscoe,
Crim. Ev. page 17; Bishop, Stat. Crimes, sec. 608; 1 Bishop,
Mar. & Div. chap. 25; *Elliot* v. *State,* 125 Ga. 31; *Tison* v.
*State,* 125 Ga. 7; *State* v. *Winkley,* 14 N. H. 494; *State* v.
*Wallace,* 9 N. H. 515; *Travers* v. *Reinhardt,* 205 U. S. 436;
*Jennings* v. *Webb,* 8 App. D. C. 56; *State* v. *Clemenson,* 123
Ia. 527.

*Mr. William Earle Ambrose,* for the appellant Noble:

1. The indictment fails to state with that precision and cer-
tainty which is recognized by law, the crime of conspiracy, and
in vain will you look for any averment that the defendant Noble
was charged with knowledge or had any means of knowing that
there was an equity case in the supreme court of the District
of Columbia, or that the woman against whom the unlawful
conspiracy was alleged to have been directed was the woman
named in any equity case of which he had knowledge. *United
States* v. *Hess,* 124 U. S. 482; *United States* v. *Carll,* 105 U.
S. 611; *Markham* v. *United States,* 150 U. S. 319–326; *State*
v. *Parker,* 43 N. H. 83; *United States* v. *Walsh,* 5 Dill. 58,
Fed. Cas. No. 16,636.

2. The act and admission of the defendant King should not
be considered as the act of Noble or as evidence against him.
*Logan* v. *United States,* 144 U. S. 263 et seq.; Underhill, Crim.
Ev. sec. 493; Wright, Criminal Conspiracies and Agreements,
p. 217; *State* v. *Larkin,* 49 N. H. 39.

*Mr. Clarence R. Wilson,* United States District Attorney, **and**
*Mr. S. McComas Hawken,* Assistant, for the appellee:

1. A witness as to reputation must, before testifying, show
that he knows the *reputation* of the witness sought to be im-
peached, that is, what is commonly said and known of him in
the community in which he lives, and the impeaching witness
is not allowed to state his personal opinion of the witness sought
to be impeached, nor his knowledge of his character, nor what
one or two people have said about him. *Com.* v. *Rogers,* 136
Mass. 158; *Marks* v. *Fox,* 18 Fed. 713; *Teese* v. *Huntingdon.*
23 How. 2, 13; *Webber* v. *Hanks,* 4 Mich. 198; *Pickens* v.
*State,* 61 Miss. 563; *Horton* v. *Chadbourn,* 31 Minn. 322; *Cole*
v. *State,* 59 Ark. 50, 54; *Crabtree* v. *Kile,* 21 Ill. 180, 183;
*People* v. *Cord,* 157 Cal. 562, 571; *Vernon* v. *Tucker,* 30 Md.
456, 463; *Matthewson* v. *Burr,* 6 Neb. 312, 316; 1 Greenl. Ev.
461.

2. The indictment was sufficient. *Dufour* v. *United States,*
37 App. D. C. 497.

3. Section 37 of the Penal Code, which is substantially the
same as sec. 5440 of the Revised Statutes, denounces as a crime
a conspiracy to defraud the United States or to commit an of-
fense against the United States.

As this court held in the *"Bucket Shop Cases," United States*
v. *Cella,* 37 App. D. C. 423, crimes committed in the District
of Columbia are crimes against the United States, and to con-
spire to commit an offense denounced by the Code of the Dis-
trict of Columbia is a conspiracy under sec. 5440 to commit a
crime against the United States. When, therefore, two or more
persons agree together to commit the crime of murder or per-
jury, or, as in *Giest* v. *United States,* 26 App. D. C. 594, the
crime of obtaining money by false pretenses, it is proper to in-
dict them for conspiracy under sec. 37 of the Code. If, how-
ever, two or more persons conspire to do an injury to another
person, which injury would not constitute one of the offenses
defined by the District Code, they may still be indicted for the
common-law conspiracy, under sec. 910 of the District Code.

*De Forrest* v. *United States,* 11 App. D. C. 458, 465; *Palmer* v. *Lenovitz,* 35 App. D. C. 303.

That conspiracy was a crime at common law, and that it is not requisite that the object of the conspiracy be to commit a crime, but only that it be unlawful, are well-established principles. Clark's Crim. Law, pp. 119–121; *State* v. *Rowley,* 12 Conn. 101; *State* v. *Burnham,* 15 N. H. 396; *Com.* v. *Warren,* 6 Mass. 73; *State* v. *Buchannan,* 5 Harr. & J. 317; *State* v. *Mayberry,* 48 Me. 218; *State* v. *Donaldson,* 32 N. J. L. 151; *People* v. *Richards,* 1 Mich. 216; *State* v. *Shooter,* 8 Rich. L. 72; *State* v. *Straw,* 42 N. H. 393; *State* v. *Younger,* 1 Dev. (N. C.) 357; *Rex* v. *Grey,* 9 How. St. Tr. 127; *Smith* v. *People,* 25 Ill. 17; *Anderson* v. *Com.* 5 Rand. (Va.) 627; *State* v. *Savage,* 48 Iowa, 562; *State* v. *Murphy,* 6 Ala. 765; *Miffin* v. *Com.* 5 Watts & S. 461; *Cole* v. *People,* 84 Ill. 216; *Rex* v. *Delavel,* 3 Burr. 1432; *Reg.* v. *Mears,* 4 Cox, C. C. 423; *Reg.* v. *Howell,* 4 Fost. & F. 160; *State* v. *Hickling,* 41 N. J. L. 208; *Crump* v. *Com.* 84 Va. 927; *Com.* v. *Tibbetts,* 2 Mass. 536; *Reg.* v. *Best,* 2 Ld. Raym. 1167; *Johnson* v. *State,* 26 N. J. L. 312; *People* v. *Saunders,* 25 Mich. 119; *Com.* v. *Spink,* 137 Pa. 255; *Hazen* v. *Com.* 23 Pa. 355. See also *Com.* v. *Nichols,* 134 Mass. 531; *People* v. *Dyer,* 79 Mich. 480.

Mr. Justice ROBB delivered the opinion of the Court:

The government has assumed, and its view was accepted by the learned trial justice, that this indictment charged the defendants with a common-law conspiracy to do an injury to another person. That the common law, except in so far as inconsistent with or replaced by some provision of statute, is in force here, is conceded by defendants. *Palmer* v. *Lenovitz,* 35 App. D. C. 303. But they contend that the acts charged in this indictment are denounced by two sections of the Code of the District, and hence that sec. 37 of the Federal Penal Code of March 4, 1909, 35 Stat. at L. 1088, chap. 321, U. S. Comp. Stat. Supp. 1911, p. 1588, governs. That section was formerly sec. 5440 of the Revised Statutes, U. S. Comp. Stat. 1901, p.

3676, and provides that "if two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner, or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined not more than $10,000, or imprisoned not more than two years, or both." By sec. 818 of the District Code [31 Stat. at L. 1323, chap. 854], it is made an offense for anyone wrongfully to accuse "any woman of unchastity," and under sec. 858 of the same Code the crime of perjury is denounced. Anyone in the District of Columbia who commits the crime of perjury or of wrongfully accusing a woman of unchastity commits a crime against the United States. And it necessarily follows that an indictment for a conspiracy to commit either of those crimes charges an offense under said sec. 37 of the Federal Penal Code. *United States* v. *Cella,* 37 App. D. C. 423.

Section 910 of the District Code [31 Stat. at L. 1337, chap. 854], upon which the government contends this indictment is based, provides that anyone convicted "of any criminal offense not covered by the provisions of any section of this Code, or of any general law of the United States not locally inapplicable in the District of Columbia, shall be punished by a fine not exceeding $1,000 or by imprisonment for not more than five years, or both." This section obviously was enacted to cover offenses not embraced in any other section of the District Code or of any general law of the United States not locally inapplicable. It was enacted out of abundant caution, and to cover any offense for which no other provision had been made. Where the facts of a given case show that the offense committed is embraced either in the local Code or in some general law not locally inapplicable, obviously this section has no application. A prosecution under this section, when the facts show that the offense is covered by some specific statute, is clearly unauthorized. In other words, this section was intended to supplement, and not supersede or modify, specific statutory provisions.

In the indictment before us the pendency of an equity cause in the supreme court of the District is averred. It is then

averred that the defendants, intending to injure Mrs. Fletcher, the wife of one of the defendants and the plaintiff in said equity cause, by securing false and fraudulent evidence of adultery against her with the intent and purpose to use such evidence against her in said equity cause, entered into a conspiracy to carry out their evil purpose. After setting forth the overt acts, it is then averred that they were done for the purpose of injuring Mrs. Fletcher by securing false and fraud-. ulent evidence of adultery against her, "with the intent and purpose to use the same against her, the said Julia B. Fletcher, in the said equity cause, so pending, as aforesaid, in the supreme court of the District of Columbia, against the form of the statute in such case made and provided, and against the peace and government of the said United States." Can there be any real question, upon a reading of this indictment, that these defendants are there charged with the crime of conspiracy to commit perjury? Clearly, if they were guilty of the acts charged, they were guilty of that offense. If guilty of the acts charged, they were also guilty of conspiracy wrongfully to accuse a woman of unchastity. But it is apparent, we think, that the pleader intended to charge them with the crime of conspiracy to commit perjury, and not the latter offense. Under the interpretation, therefore, which we have given to said sec. 910 of the District Code, that section has no application here.

The motions to quash and in arrest of judgment were properly overruled. Counsel, as in many conspiracy cases, overlook the difference between an indictment for conspiracy to commit an offense and an indictment for the substantive offense. *Dufour* v. *United States,* 37 App. D. C. 497. In a charge of conspiracy the conspiracy is the gist of the crime, and certainty to a common intent, sufficient to identify the offense which the defendants conspired to commit, is all that is requisite in stating the object of the conspiracy. *Williamson* v. *United States,* 207 U. S. 425, 52 L. ed. 278, 28 Sup. Ct. Rep. 163. Here the indictment sets forth the pendency of the equity proceeding and the parties thereto. It then charges that these defendants, for the purpose of securing false and fraudulent evidence

against Mrs. Fletcher, for use *"in the said equity cause, so pending, as aforesaid,"* entered into the conspiracy. It is objected that this is not a sufficient averment of knowledge on the part of the defendants of such equity proceeding. It is not perceived how they could conspire to secure false and fraudulent evidence to be used in a specific case, then pending, without knowledge of that case. But this point is fully covered in the Dufour Case, and, without further elaboration, we rule that the indictment does, with sufficient certainty, charge the defendants with knowledge of the pendency of said equity cause. Nothing in *Pettibone* v. *United States,* 148 U. S. 197, 37 L. ed. 419, 13 Sup. Ct. Rep. 542, is inconsistent with this ruling. In that case there was no averment that the object of the conspiracy was to obstruct the due administration of justice. On the contrary, there was no contention on the part of the government that the defendants even knew of the pendency of any court proceedings. Rather was it charged that the result of the acts of the defendants was to obstruct the due administration of justice. The court ruled that a person is not sufficiently charged in such a case with obstructing or impeding the due administration of justice in a court, unless it appears that he knew or had notice that justice was being administered in such court. In the present case there is a specific charge that the very object of the conspiracy was the procuring of false evidence for use in a certain named case then pending. The difference between the two cases is so apparent that further comment is unnecessary.

We will next consider the defendants' contention that the jury was not drawn according to law. Section 204 of the District Code [31 Stat. at L. 1222, chap. 854] provides that "the clerk shall publicly break the seal of the jury box and proceed to draw therefrom the names of twenty-six persons to serve as jurors," etc. The record shows that when this question was raised at the trial the court heard evidence as to how the names of the jurors were drawn from the box, and it appeared that in the public office of the clerk, by his direction and in his presence, an assistant clerk broke the seal of the jury box,

drew the slips from the box, and read the names, which were transcribed into the jury book by an assistant. This took place during business hours, when there were several people in the office, beside the clerk and his assistants. Upon this evidence the court found as a fact "that the seal was publicly broken, and that what took place occurred in a public place, and so far as having been done by the deputy clerk, it now appears that it was done by the clerk; the deputy was only his hand and voice, exactly as if he had done it himself." We concur in this ruling.

It is specified as error that the court granted the government's motion to strike out the testimony of a witness by the name of Lagier as to the reputation for truth and veracity of Leroy Wilson, mentioned in the indictment and called as a witness on behalf of the government. The facts upon which this assignment is based are as follows: Lagier was called as a witness for the defense, and was asked if he knew Wilson, and replied that he had known him since September 8, 1911, a period of about a year and a half. He was then asked whether he knew other people who knew Wilson, and replied that he did. Asked whether he knew his general reputation for truth and veracity, he replied in the affirmative. He was then asked what that reputation was, and answered that it was ·bad. He was then asked, from his knowledge of Wilson and from his reputation as he had gained it from his associates, whether or not he would believe him under oath, and replied in the negative. In cross-examination the witness was asked whether he had ever heard anyone discuss Wilson, and answered: "I never have." The following question was then propounded to him: "You are just testifying to your own belief about him, then? A. My own belief." Defendants' counsel was then permitted to examine the witness with the view to ascertaining his competency to testify, and thereupon the following occurred: "Have you at any time heard any discussion among the other men in respect to this man Wilson? The Court: Any discussion that would affect his reputation for truth,—whether he would tell the truth. A. Not to my knowledge; I never have."

Thereupon the court, upon motion of counsel for the government, struck out the testimony of the witness, the court ruling that there was "not a shred of basis for any testimony as to reputation on his part."

In *Teese* v. *Huntingdon,* 23 How. 2, 16 L. ed. 479, attention is directed to the fact that courts differ, where the general reputation of a witness for truth and veracity is the sole criterion of his credit, as to whether the inquiry may not properly be extended to his entire moral character and estimation in society; that courts also differ as to the right to inquire of the impeaching witness whether he would believe the other on his oath. After a citation of authorities upholding the two views, the court said: "Both Mr. Greenleaf and Mr. Taylor agree, however, that the impeaching witness must be able to state what is generally said of the other witness by those among whom he resides, and with whom he is chiefly conversant, and in effect admit that, unless he can so speak, he is not qualified to testify upon the subject, for the reason that it is only what is generally said of the witness by his neighbors that constitutes his general reputation." Later on in the opinion the court laid down the rule that "whenever a witness is called to impeach the credit of another, he must know what is generally said of the witness whose credit is impeached by those among whom the last-named witness resides, in order that he may be able to answer the inquiry either as to his general character in the broader sense, or as to his general reputation for truth and veracity." Where, as here, it develops that there was no basis whatever for the testimony of the impeaching witness, we think the rule above laid down applies, and it is the duty of the court to strike out such testimony. *People* v. *Cord,* 157 Cal. 562, 108 Pac. 511. In this jurisdiction, when the impeaching witness knows the general reputation of the witness sought to be impeached, he is permitted to say whether he would believe that witness under oath.

In behalf of the defendants Noble and May King it is assigned as error that the government did not prove the marriage of the defendant Fletcher and Julia B. Fletcher. The bill in

equity, answer, and cross bill, were admitted in evidence as to all the defendants to show the pendency of that suit, and against Fletcher to prove his marriage. They were competent for the purposes offered, and since they were not permitted to go to the jury they could have had no other bearing upon the case. It is not questioned that the answer and cross bill were sufficient to prove marriage as against Fletcher. The contention is that it was not proven as against the other defendants. There was evidence before the jury tending to support the averments of the indictment; that the conspiracy was entered into for the purpose of obtaining false evidence against Julia B. Fletcher, *the wife of the defendant* Fletcher, to be used in the divorce suit then pending; in other words, that the defendants knew of the divorce suit and that Julia B. Fletcher, the plaintiff therein, was the wife of the defendant James J. Fletcher. This was sufficient. The gist of this offense, as before stated, is the conspiracy, and it is immaterial "whether the crime which the conspirators have conspired to commit is consummated." *Williamson* v. *United States,* 207 U. S. 425, 447, 52 L. ed. 278, 290, 28 Sup. Ct. Rep. 163. Here the defendants knew of the pendency of the divorce proceedings, and conspired to give false testimony therein. Would it have made their crime any less obnoxious had there been a failure to establish the marriage of the Fletchers? Clearly not. Moreover, the facts alleged and proved made out the offense of conspiracy falsely to charge a woman of unchastity, so that in any event this assignment is without merit.

The defendant Fletcher complains of the refusal of the court to grant certain prayers submitted by him. A careful reading of the court's charge shows that the substance of those prayers was incorporated therein.

We have ruled that this was an offense under sec. 37 of the Federal Penal Code. It follows, therefore, that sentence should have been imposed under that section, and not under section 910 of the Code of the District of Columbia. While only two of the three defendants have raised this question, we think the interests of justice require, and it is so ordered, that the judg-

ment be reversed as to all the defendants and the cause remanded that sentence may be imposed agreeably to this ruling. *Ballew* v. *United States,* 160 U. S. 187, 40 L. ed. 388, 16 Sup. Ct. Rep. 263; *Re Gompers,* 40 App. D. C. 293, — L.R.A. (N.S.) —.

A motion by the appellants for a rehearing filed March 9, 1914, was denied April 6, 1914, Mr. Justice Robb delivering the opinion of the Court:

Motion for a rehearing has been filed in this case upon the ground that the defendants were tried for a common-law conspiracy, and hence may not be sentenced under sec. 37 of the Federal Penal Code for a conspiracy to commit perjury. It is difficult to keep pace with the changing contentions of defendant's counsel. In the original brief for the defendant Fletcher it is contended that "an examination of the indictment shows that the conclusion charges the defendants with having committed the offense 'against the form of the statute in such case made and provided, and against the peace and government of the United States,' " and that "this language of the indictment itself could only be applicable to a violation of sec. 37 of the Penal Code, and has no application to an offense of conspiracy to commit perjury, at common law." It was further insisted that sentence should have been imposed under said sec. 37.

It was carefully pointed out in the opinion of the court that every element of the offense of conspiracy to commit perjury, including the overt act, was set forth in the indictment. There was ample evidence to support each of those averments. The defendants knew exactly what they were called upon to meet, and a careful examination of the record shows that they were in no way misled at any stage of the trial. Neither the court nor counsel for the government, prior to the time of sentence, indicated that the defendants were not being tried for conspiracy to commit perjury. On the contrary, in his charge to the jury the court read the first count of the indictment, in-

cluding of course that portion charging overt acts, and said: "Now, as has been said, you are to try the case upon the indictment, and under the law as laid down to you, and that is true of every case in a criminal court. You are to try nothing but the case that is charged in the indictment, because the defendants have a right to know what they are to meet when they come into court, and they are guilty or not guilty of the crime charged here, and not of something else. That is always true, and you see from this reading just what the crime charged is, and all parts of it, which I have read to you, with the qualifications previously stated as to the case (divorce case) being at issue—technically at issue, and as to the exact date,—*all the other matters are material* and must be proved substantially as alleged." It thus affirmatively appears that the jury fully understood that the overt acts must be proved.

After verdict the learned trial justice evidently became convinced that the indictment also was sufficient to cover a common-law conspiracy, and sentenced the defendants accordingly. Under our ruling the defendants were charged, tried, and convicted not of a common-law conspiracy, but of a conspiracy under sec. 37 of the Penal Code of the United States, and hence should have been sentenced under that section.

*Petition denied.*