**UNITED STATES of America,**
**Plaintiff,**

v.

**Charles W. GORMAN and Lyle Clune,**
**Defendants.**

**Cr. A. No. 39166.**

United States District Court
E. D. Michigan, S. D.

June 15, 1962.

As Amended July 9, 1962.

Lawrence Gubow, U. S. Dist. Atty., William H. Merrill, Asst. U. S. Dist. Atty., Detroit, Mich., for the United States.

Joseph B. Sullivan, Detroit, Mich., for defendant Lyle Clune.

Robert E. Toohey, Detroit, Mich., for defendant Charles W. Gorman.

MACHROWICZ, District Judge.

On December 14th, 1961, the Honorable Wade H. McCree, Jr., District Judge of this District, issued a warrant for the search of premises known as 23334 Lakewood Street, Clinton Township, Michigan. The said property is owned by the defendant, Charles W. Gorman, but is not occupied by him as his residence. The warrant was executed on the same day, and certain gambling paraphernalia were seized in the presence of the defendant, who was on the premises at the time of the search.

A warrant was issued for the arrest of the defendant Gorman on the same day, and he was placed under arrest. On the 9th day of January, 1962, an indictment was returned against him charging

him in several counts with violation of the Federal Gambling laws.

On January 8, 1962, an order was issued on motion of defendant Charles W. Gorman, ordering the United States Attorney for the Eastern District of Michigan, to show cause why an order should not be entered quashing the search warrant, dismissing the complaint and warrant and ordering the suppression and return of the property seized pursuant to the execution of the search warrant.

In view of the fact that an indictment was returned before the order to show cause was heard, the motion for the dismissal of the complaint and warrant is a moot one. With reference to the part of the motion seeking the suppression and return of the property, the Court took testimony on January 19th, 1962, and further testimony on March 12th, 1962, heard oral arguments and was presented briefs by both parties. The motion of the defendant is based on the claim that the search of the premises was illegal because of the insufficiency of the affidavit upon which the search warrant was based and because the execution of the warrant was allegedly improper and illegal.

The affidavit of Special Agent John T. Zawadzki in support of the search warrant sets forth:

1. That he has reason to believe the premises were owned and under the control of the defendant, Charles W. Gorman and "that there is now being concealed certain property, namely, book-making records, wagering paraphernalia consisting of bet slips, run-down sheets, account sheets, recap sheets, telephones, money used in or derived from book-making operations and other means and instruments used in violation of Sections 4412, 7203 and 7262 of the Internal Revenue Code of 1954 [26 U.S.C.A. §§ 4412, 7203, 7262]".

2. That he was assigned to investigate alleged book-making activity of this defendant from these premises.

3. That he checked the records of the District Director, Internal Revenue Service, in Detroit, and found that the defendant was advised in June, 1953, of the Federal wagering tax laws.

4. That the defendant's criminal record discloses that he is a convicted book-maker.

5. That on November 13, 1961, he obtained information from the Michigan Bell Telephone Company concerning two (2) telephone numbers on the premises, disclosing that between July 16th, 1961 and November 4th, 1961, there were at least one hundred sixty-one (161) long distance calls charged to one of these numbers to and from points in Michigan and Houston, Texas. More than fifty percent (50%) of these originated from a telephone in Houston, Texas, subscribed to by a known convicted hand-book operator.

6. That "confidential information considered reliable" discloses that defendant received lay-off bets from Houston, Texas.

7. That during the period from November 13th, 1961 through December 13, 1961, he and law enforcement officers under his direction observed the defendant regularly enter the premises between approximately, 9:15 A.M. and 11:38 A.M., and depart shortly before 6:30 P.M., these being the normal hours of book-making offices in the Detroit area.

8. That during the same period, several others, regarding whom he had "confidential information considered reliable" that they were engaged in hand-book activities, were seen entering the premises either alone or in the company of this defendant.

9. That this defendant and Lyle Clune, another defendant in these proceedings, regularly departed from these premises at about 6:30 P.M. and drove to this defendant's resi-

dence, where they were seen at a table doing paper work.

10. That no wagering tax stamp was issued to this defendant by the District Director of Internal Revenue in Detroit, there was no record of his registration of issuance of a wagering occupational stamp, there is no record that any excise tax returns were filed by him, also that the premises were not registered as the business or residence address of a wagering stamp holder.

This Court is aware of and fully subscribes to the opinion of the Honorable Wade H. McCree, Jr., Judge of this District, in the case of the United States of America v. Edward Betz, D.C., 205 F.Supp. 927, in which the Court granted an order similar to the one requested here. The search and seizure of other premises in the Betz case was one in a series conducted on the same day as the one in this instance and was based on an affidavit of the same affiant as in the present case, which contained many allegations similar in substance to those in the present case.

This Court notes, however, that there are certain allegations in the present affidavit not present in the affidavit in support of the warrant for the search and seizure of the premises in the Betz case. These are:

1. The defendant's prior criminal record.

2. The presence of the two telephones and of at least one hundred sixty-one (161) long distance calls to or from a known convicted handbook operator in Houston, Texas.

3. The regular entry and departure to and from the premises by the defendant and others, regarding whom confidential reliable information was received that they are engaged in hand-book activities, at normal book-making activity hours.

The United States Court of Appeals for the Sixth Circuit has very recently issued opinions in two cases which this Court

feels are very pertinent to the issues presented by this motion.

In the case of United States of America v. Woodson et al., 6 Cir., 303 F.2d 49, the Court ruled that the allegations contained in the affidavit were sufficient to establish probable cause to justify issuance of the search warrant. The allegations therein, in addition to information from "reliable confidential sources" consisted of the following: the presence of eleven (11) different automobiles at the premises, belonging to persons holding Federal Gaming stamps, or persons who had been arrested for lottery violations, or who had the same residential address as people who either held Federal Gaming stamps or had been arrested on lottery charges, or who had the reputation of "numbers" writers, or who had been observed on apparent "numbers" routes. They also included "activities in and about the suspected premises of persons known to the agents as gamblers and numbers operators".

The Court said:

"When, in addition to this information, the supporting affidavits of each of the four Special Agents disclosed their personal observations and investigations during a two-week surveillance period 'there was put before the Commissioner' sufficient evidence to establish probable cause to justify the issuance of the search warrant."

The Court then cited with approval the cases of Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; Locke v. United States, 7 Cranch 339, 3 L.Ed. 364, and Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879.

In the cases of United States of America v. Nicholson, 303 F.2d 330, heard together and decided by the United States Court of Appeals for the Sixth Circuit on May 24, 1962, the Court also sustained the search warrant which was attacked for alleged insufficiency of the affidavits in support thereof.

There the two affidavits stated that the defendant was a known gambler and

book-maker, that there was on the premises occupied by him and his mother-in-law one (1) telephone in her name and two (2) more in the name of an alias sometimes used by the defendant, that a known book-maker had made numerous long-distance calls to one of the two numbers listed in the name of the alias used by the defendant, that approximately two hundred ninety-three (293) long distance calls were charged to these telephones in a period of three and one-half (3½) months preceding the search, many from phones subscribed to known gamblers in other areas.

■ The Court, again relying on the case of Brinegar v. United States, supra, upheld the validity of the search warrant, stating that

"because many situations are more or less ambiguous, a determination that probable cause exists should be accepted by this Court unless it is shown that the Commissioner's judgment was arbitrarily exercised."

There is no showing in this case that the judgment of the District Judge who issued the warrant was arbitrarily exercised, and the facts in the present case are in many respects similar or comparable to the facts in the two Circuit Court of Appeals cases cited above. This Court, therefore holds that the search warrant was properly issued and that the motion should not be granted on that ground.

The defendant presents as further ground for his motion, the claim that the warrant was improperly and illegally executed.

The testimony discloses that Federal Agent Alfred Biernat, in charge of the raiding squad, knocked on the outer front door of the premises, announced that he was a Federal officer with a search warrant, and when there was no response, after about twenty-five or thirty seconds, knocked the door in and entered. Other officers entered at the same time or shortly thereafter, through the rear door and the upper window, both of which were kicked open or broken into in order to gain entry. The defendant was

in the premises and the paraphernalia were then seized. Though there is some dispute as to the actual time of entry into the building of the other officers, this Court, after reviewing the testimony carefully, is convinced that it does not disclose that any of the other officers made entry into the building before officer Biernat had announced himself and was already in.

■ How much time is needed for an officer to wait after announcing his presence and purpose, is a question that must be determined by the facts and circumstances of each case. It has been held that substantial compliance is all that is required in matters of this kind. (United States v. Freeman, D.C., 144 F.Supp. 669). Under the facts of this case, the Court is of the opinion that there was no unlawful or improper execution of the search warrant.

An order may be entered accordingly, DENYING the motion to quash the search warrant and to suppress and return the property seized pursuant to the execution of the search warrant.